Next case for argument is 23-1374, Takeda Pharmaceutical Company v. Norwich Pharmaceuticals. Mr. Landman, am I saying that right? That's correct, Your Honor. Thank you. Please proceed. May it please the Court, briefly, before I get into the merits, as set forth in our motion to expedite the appeal, time is of the essence. If this Court doesn't issue a mandate well in advance of the August 24th expiration of Takeda's pediatric exclusivity period, Takeda will win by default, even if this Court later reverses and vacates the judgment. Although this- Can I just ask you, since you raised that, if we, I mean, frankly, it sounds impossible to me to issue a mandate because they have a right to ask for a rehearing, which is gonna delay the mandate for 45 days. But assuming we agree with you on every single issue here, which I think you have to win on, and we expedite the mandate, what do you get if we find these patents, all of them invalid before August? We would then be able to obtain FDA approval and bring our product to market, or Norwich would be able to bring its product to market. Well, so does everybody else in August. On August 24th, correct, or- Do you get another, do you get an exclusive period after August? Norwich does not. No, it would be the sole generic product on the market until the expiration of the pediatric exclusivity period. But you would be the, so you want us to get it out before August 24th because you'd be the exclusive generic between now and then, is that right? Well, I mean, that's one of the reasons, but also once August 24th hits, then there's no pediatric exclusivity and there's nothing stopping Norwich or anyone else from going to market, including the district court's order below, only stops Norwich from going to market until August 24th. So we not only have to get it out before August 24th or whatever, we have to get it out substantially before then, but for you to get any real benefit. Obviously, the sooner the better, but yes, we would then have to deal with FDA and get FDA approval. And obviously, as Your Honor mentioned, move to expedite the issuance of the mandate. Which they're gonna oppose. How long would your exclusive rights last? Just until August 24th. The district court's decision, there are several errors from the district court's decision. The appellee suggested you have to win on every single one of these claims for us to rule in your favor, is that correct? This court needs to find that the district court committed a reversible error and vacate the judgment below on every one of the claims. How many claims are there? Actually, I forget the exact number. It's like 14 or something, right? That's correct, Your Honor. And most of these are a clear error standard. Some of them are a clear error, but I think, in fact, the district court's errors do meet that standard, and they really fall into five buckets. I mean. Boy, that's a lot of buckets to be carrying around, isn't it? The general rule for an appellate argument is you pick your three strongest arguments and make to us. And if you have to make, you pick more than three, then you haven't picked out the three strongest. Well, you have to win on a bunch of them. I mean, I just don't understand why we're here for something that we're not gonna get the decision out in time, and I fail to see how you can win on 14 different claims when a bunch of them are under a clear error standard. So, Your Honor. I know you're representing your client, but at some point, like we suggested earlier, you tell your client, this is a waste of the court's time and a waste of the client's money. Yeah, so with all due respect, and we're very respectful of the court's time and the court's efforts, we don't think it's a waste of the court's time or a waste of money. And the district court had to deal with a patent ticket that was created by Takeda's predecessor. And because of that, there were numerous issues that were set forth before the district court, but some of them really scream out for this court reversing. And if I can just run through. But it's not just some of them that you have to win on. You have to win on all of them. Well, we do. I mean, I think you have some really good arguments on some of this stuff, but it doesn't help if you have some arguments that are not gonna get over a clear error standard on other things. Well, we do win on all of them because the patents all expire in the same day. Because the way this patent ticket was put together, they all returnally disclaim and expire in the same day. So, yes, it is different than a case where patents expire on different days. But there are a lot of appeals where you do have to win on all the issues that the district court decided in order to get relief below. Turning to the district court's errors, as I mentioned, they're really five that stand out, we think, that require reversal in vacating the judgment below. The first is that the court defined abuse, which was the problem to be solved, in stark contrast to the testimony of both sides' experts in the prior art. The second is that it rejected the Patrick prodrug reference by requiring a POSA to follow a convoluted path, indeed a path that both sides agreed was impossible, instead of the straightforward path set forth by Norwich's expert. The third is that it excluded Norwich's SALT expert, even though he undisputably met both parties' POSA definitions, and he was actually qualified by the district court at trial as an expert, without objection. The fourth is that it ignored evidence showing that the pharmacokinetics are inherent in the LDX compound, including admissions by the inventor's fair. And the fifth is that it found no motivation or reasonable expectation on administering LDX to treat ADHD, simply because the compound hadn't been tested, gone through clinical testings. These really are red flags for this court. Starting with the prodrug limitations, so the district court's incorrect definition of abuse led for its failure to find a motivation to combine the deamphetamine lead compound, the lead compound the court found that no one can test here, by making a prodrug. And as we discussed in our opening briefs at pages 14 to 16, the district court should have found that motivation straightforward by walking through its fact findings. But rather than follow those to its natural conclusion, the district court turned to motivation to make a prodrug, that motivation being that extended-release products could be defeated by crushing. The district court incorrectly took that motivation as a definition of abuse, and defined the problem of deamphetamine abuse as a problem arising from crushing. But that led the court then to incorrectly look for a motivation to solve the crushing problem, and not the problem of abuse, which the experts agreed was caused by the euphoria that happens when you take deamphetamine, and the spike of active in the blood by the deamphetamine.  the desire to abuse the drug. But the abuse is not euphoria, that's not the abuse, that's the result of the abusing. So the abusing has to be the method by which you cause the euphoria to occur, correct? No, I think the abuse, so backing up, the problem to be solved here is preventing abuse that was happening with deamphetamine, and stopping people from wanting to abuse deamphetamine. So the solution to that, that the experts agreed on, was stopping the spike of active in the blood. There were a couple of alternatives discussed, there was the extended release formulation alternative that was discussed, that though, those tablets, everyone agreed you can crush those and defeat that extended release function. That's exactly the point, abuse is how do I cause myself to have this euphoric feeling? So abuse is action, the action could be crushing, it could be injecting, it could be snorting, it could be taking 15 pills instead of one, right? I mean, so the abuse is the act that one performs to cause the euphoria, is that fair? So that is fair, but the inquiry the district court should have gone on is what is the motivation to fix the euphoria, because euphoria is, as you said before, is what leads to the abuse. So the experts talked about on both sides that the euphoria was there from deamphetamine, and that a POSA would have wanted to solve that euphoria problem. So instead of getting hung up kind of on what abuse is, the district court should have been focused on what is the motivation a POSA would have been focused on, seeing that deamphetamines were being abused, and that abuse stemmed from the euphoria of the deamphetamine release. Turning to the second bucket I mentioned, which was the Patrick reference, consistent with the court's lead compound law, Dr. Malamo set forth how a POSA would have applied the teachings of Patrick, which was to create a prodrug using nalysine promyelone and attaching that to a primary amine group to blunt the release. Instead of doing that, the district court came up with this complicated cookbook analogy and said that a POSA would have treated Patrick as quote, like a cookbook, but it did that despite the fact that experts on both sides said that it was impossible to treat Patrick that way and to treat deamphetamine that way. And obviousness can't be defeated by coming up with some complicated, non-existent solution when there's a simpler solution presented by the POSA. And when the district court's error there is corrected, there's the only conclusion that can be reached is that Patrick creates both a motivation and a reasonable expectation. Our standard is an error, it's clear error. And I don't see how the district court clearly erred in finding that you failed to prove a skilled artisan would have been motivated to modify the deamphetamine with Patrick's LDZ pro-drug example. Well, it was the court looking or treating Patrick. Dr. Kilbanov, I don't know if I'm saying his name right, he offered testimony and the district court expressly found that more credible than Dr. Malamose. You expect me to dive behind that? No, obviously the court's job here is not to dive behind credibility determinations, but the district court used this cookbook analogy that neither expert was putting forth. And the district court looked at Patrick as like a cookbook. And that was where the district court went wrong. Instead of following the teachings that a POSA would have applied to the lead compound, that is what Patrick taught, the district court went through this complicated cookbook analogy and created a complication that frankly wasn't there. Turning to the salt limitations, the district court's post-trial sui sponte exclusion of Dr. Sloan, the salt expert, led to its improper conclusions here with clear error and required reversal. Dr. Sloan was a professor of medicinal chemistry, and here's three undisputed facts. He met both parties' POSA definitions. He was qualified by the district court at trial as an expert in salt selection without objection, and no one filed a motion to exclude him. He possessed all the necessary experience, including working with mucilate salts. And there is no dispute that the district court at the time encouraged the parties to dispense with normal foundational testimony about an expert's qualifications. It was simply improper, and Takeda points to no case in which a court, later in time, changes the POSA definition to exclude an expert, and for that reason, the court's conclusions with respect to the salt limitations should be reversed, and the district court should be vacated. But I thought the district court excluded Dr. Sloan's testimony for five separate reasons. So why don't you go through each of these? He had never performed a salt screening, even though he applied to skilled artists and would routinely perform them. He mistakenly said at his deposition he had reviewed drafts of Dr. Malamot's expert report, so therefore, he was sort of not credible. He stated that his own patents are not enabled, but he never told the PTO. He then said the district court's observations of, or the district court based also on its own observations of his demeanor on the stand, which he found not to be credible. And then finally, the district court concluded his testimony was internally inconsistent. So why don't you go ahead and tell me why every one of those five reasons is wrong, because that's what you gotta get to, to get Sloan in. Well, so those five reasons. Your three remaining minutes. Yeah, I do wanna reserve a couple minutes, but really quickly, those five reasons were credibility determinations the court ran through. He only excluded Dr. Sloan on the first reason, that Dr. Sloan had not personally performed a salt screening, and Dr. Sloan said, I have not personally performed it, but it's routine in the art, it's routine part of salt selection. And that's where the district court went wrong, because that wasn't required by the POSA definition. He didn't just say it's routine in the art, he said an ordinarily skilled artisan would have routinely performed it. Yes. So how is he an ordinarily skilled artisan if he's never done something that an ordinarily skilled artisan would have done? Yeah, I guess I'd say two things, Your Honor. One, that wasn't part of the POSA definition that the court applied. The court apparently went back to responding, no party was saying that that is part of the POSA definition. The guy you want to testify said it, and then the district court says, okay, you're saying you have to have done this to be an ordinarily skilled artisan, and then you're admitting you didn't do it. He's not credible. That's it, done. So that's the credibility part, but first I think this court needs to deal with the exclusion part. But maybe more importantly, Your Honor, the court failed to then consider any of the prior art that was put before it on the salt issues. This court in the Bear Farmer case and the Pfizer case we cited in our papers says it's improper for a district court to do that even after making credibility determinations. Okay, do you want to save time for rebuttal? I do, thank you, Your Honor. Please, the court. Good morning, Ed Haug for the Plaintiff, Appell E. Decatur Pharmaceutical Company. Perhaps I'll jump right into answering a question I heard about what is Norwich really trying to do here. We filed a motion on this, actually, and discussed what we think they're doing. Of course, I'm speculating to the extent I'm not part of their team. However, Norwich has no exclusivity right now at all. They are an adjudged infringer on 14 claims across nine patents following the trial that we had in New Jersey in November. So now they cannot launch until the pediatric exclusivity expires, which is in August of 2023. There's a six-month pediatric exclusivity period that attaches to the end of the patent expirations. All the patents in this case have already expired. They expired in February. What Norwich is looking to do, I believe, is get a vacature of the decision below so they can argue they were never found to be an infringer and the patents were not found to be not invalid before they expired. And then they will argue, probably, pediatric exclusivity doesn't apply to them, even though it does apply to all the other generic challengers that have gone before in a prior case that this court has already affirmed. That's what I think is behind all of this. Otherwise, this makes no sense whatsoever for Norwich to have even filed an ANDA so many years after everyone else has filed and lost on the same patents or overlapping patents. Going to the trial, we moved for summary judgment shortly before trial. Judge Chester denied that motion because Norwich argued, Judge, this is a battle of the experts, a classic battle of the experts. The judge agreed and said, we'll go to trial. We had the trial in November and it was a battle of the experts. There were nine experts and they battled and, in our view, Norwich lost that battle on each and every one of those experts. We just heard about Dr. Sloan, one of their experts, and the court found him to be lacking any credibility and gave his testimony zero weight. That is a judge's job at a trial. Dr. Sloan was in no way excluded. He testified, he was cross-examined, and he even came on for redirection. You're picking your easiest argument. What do we do if there are actually some problems with what the district court concluded? Like, for example, what if I had problems with some aspects but not others, such that I wouldn't ultimately be vacating with regard to all 14 claims and all of the different things? Should we do that or does it have any impact on the outcome of this case if we agree with them on some of their arguments but not all of the ones they need to? I think the answer is no. It has no practical outcome because unless you reverse or vacate every claim, all the arguments with respect to all the claims in this case, there will still be some patents remaining that have been found to be valid and infringed. And all of those patents are now expired. Correct. So there isn't necessarily a need for this court, as we do in many cases, to differentiate between the claims to prevent future litigation. This is it. This is the whole thing. That's correct, Your Honor. And the only thing remaining beyond expiration of these patents is one, is the pediatric exclusivity, which is part of the judgment down below, namely that they're and that cannot be approved until August of 2023. That still remains. And also, by agreement of the parties down below, there's the argument about whether or not this is an exceptional case and that would arguably go to attorney's fees if such a motion is brought. It hasn't been brought at this stage. So the case is not moot is what I'm really saying. And so I think if this court were to find that any of the patents are subject to remand for some reason, and we, of course, don't think any of them are for any reason, but I think that's what we do in our briefs and I think all the arguments are there. I don't even know what you're... I feel like you just shot yourself in the foot and me along with you. So here's the problem. If you're gonna tell me you're gonna go back and move for attorney's fees, this is an exceptional case. If we, for example, were to rule 36 it because we agree with at least one of these five things not being overturned, are you gonna go back and argue to the district court, see we rule 36 it so they agree with everything  and we should get attorney's fees? Because if so, then I gotta write an opinion because I don't agree with all of the things that the district court did. I think he got some of them, or he or she, got some of them wrong. So if you're gonna go back and make this exceptional case argument and try and get attorney's fees, you just caused me to have to write an opinion because you don't win on all these. I mean, how can you make an exceptional case argument given what you just... I'm not suggesting you're going to, but you just stood up and said,  This is a battle of the experts. I mean, when you call something a quintessential battle of the experts, that seems to me to be ordinary and a litigation. We're ordinary litigation altogether. So I don't think we're asking you to say you're not going to, well maybe, but not going to file an attorney's fees application, but it seems like the way this case went out with a bunch of different issues, a very hard fought case, and you prevailed on all of them, doesn't even come close to something that should be found to be exceptional. I was only giving the court the record. We agreed down below not to raise the issue of exceptional case or make a motion for fees, and we haven't. We just deferred it, all right? That's all we did, and then this appeal, and Your Honor, to answer your question directly, no, I'm not looking to do that. Okay, well, for the record, I think some of your arguments are affirms and I think others of them are not. I don't think you deserve attorney's fees. That's my personal view. It's on the record. Okay, Your Honor, I don't know which issues you're talking about that you would not affirm. I think we're right on all of the issues here. Every single one. How about we start with the pro-drug approach issue then, since you're right on all of them. Abuse would clearly include taking multiple pills. Why isn't that part of the definition of abuse? Every expert said it was. No. The oral ingestion of multiple pills could create the same sense of euphoria. That would constitute abuse. Why did this district court judge focus exclusively on crushing, snorting, and injecting? I think the opinion of the district court is that that was not argued by the parties, that what they were arguing was crushing and then snorting or injecting the amphetamine. That was the problem to be solved. And the court also very clearly sets forth that Norwich, who has the burden of proof to show what the problem to be solved is, it's a question of fact, they didn't do it. Counselor, the problem to be solved was eliminating the euphoria that comes from abusing this drug. Every expert testified that you can also abuse this drug through taking multiple doses. Exceeding the recommended oral dosage can also be a way of getting that same euphoric feeling. So why didn't the district court get it wrong  oral consumption of more pills from the definition of abuse? That was not the problem to be solved which was urged by Norwich down below. They have the burden to set that forth and that is a question of fact. And the court was looking at what the expert said and resolved the question of fact in the way he did and went on from there and said, this is the problem to be solved. And he, I think, gave them the benefit of the doubt. He could have stopped right there and said, you haven't satisfied your burden for clear and convincing evidence to show what the problem to be solved is. He did it for them. And then we went on with the case. And he weighed all of the expert testimony on all the issues and very clearly set forth how he evaluated those experts and how he decided them. So what was the district court's fact finding on no reasonable expectation of success in producing LDX? That LDX was not in the prior art at all. Lysine being conjugated to D-amphetamine was completely unknown. That was a new innovation. So there was no motivation or reasonable expectation of success to combine lysine with D-amphetamine. The primary reference they relied on, which was Patrick, doesn't even disclose LDX. It discloses something else, a diazepam. And it doesn't, Patrick doesn't disclose anything about abuse. So there was no suggestion whatsoever to combine Patrick with anything. And there was no reasonable expectation of success. That's my understanding of what the court found. Based on, again, all the experts that testified in this case. Well, on claim two of the 787 patent, I don't see where the district court actually made any necessary fact findings underlying obviousness with regard to the isolated LDX. I don't see those fact findings. So why shouldn't I vacate and remand for the district court to make those fact findings? I don't think that fact finding is necessary to conclude that Norwich didn't carry its burden on obviousness. It was not a specific fact finding, I don't think that was required. He found LDX was not obvious, the prodrug was not obvious. Prodrug had never been used for treating ADHD. A dimethylate salt, which is then combined to the LDX, had never been approved by the FDA before. And so we go with respect to each and every one of these patents, respectfully. And I would like to, just before I conclude, I go back to the comment before about exceptional case. I was only sending forth the record below, and I thought, trying to address the possible question I heard, which was whether or not this case is moot because the patents have expired. And I was just pointing out that I think under the precedent of this court, it's not moot because if there's a claim for attorney's fees, or if there's a pediatric exclusivity issue, then it's not moot. That's the only point I was trying to make. Unless your honors have any other questions. No, thank you, Mr. Arnott. Thank you. Thank you, your honors. Just following up quickly on one thing opposing counsel just said, that LDX didn't exist. And that was clear error for the district court to conclude just because it didn't exist that there's no motivation or reasonable expectation. Especially when the Patrick reference both defines the problem and provides the solution. Counsel, you know. Okay, I'm just gonna kind of take over now for a sec. I think the district court did a great job in this case. It was really difficult. And I think that what was accomplished was impressive. And I don't think you can possibly win in reversing all five of these things. That being said, I think that you did a good job on a couple of them, and they probably would warrant maybe vacating or remanding. But I don't know what the point is, given that you have to win all five. And this August 24th deadline is looming large. So what do you have to say to that? Assuming my hypothetical is the way I actually feel. What do I do? I obviously respectfully disagree on us fulfilling all five. But I understand hypothetical. I mean, I think what counsel just said. Counsel spent time talking about exceptional case. Counsel did not. No, but didn't we just create sufficient record for you on that that you can take back to this district court judge and put an end to that? I mean, I would hope so, Your Honor. I would hope that would be sufficient. I don't know what counsel is going to do with that and going to do with how this court disposes of the case. But obviously, that is a concern. Obviously, what's also a concern is just you have these legal conclusions and findings out there that are wrong, that stand as good case law if this court doesn't address them. But I totally understand. How do they stand as good case law? Case law for who? If I rule 36 this case, who is that case law for? It's still a district court persuasive authority. On expired patents? I'm sorry, just persuasive authority that potentially someone might want to use in a future case. But I do take your point, Your Honor. Okay, do you have a last thought? Just last thought. The district court, often where it went wrong was departing from where parties' positions that neither party advanced. And I think the reason is because the record doesn't support many of those positions, many of which we discussed already. Thank you for your time. I thank both counsel for the argument the case has taken at our submission.